**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremiah Jordan,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-21-08022-PCT-DGC<br><br>**ORDER** |

Plaintiff Jeremiah Jordan seeks judicial review under 42 U.S.C. § 405(g) of the decision of an Administrative Law Judge ("ALJ"), which denied his claim for disability insurance benefits and supplemental security income. Doc. 1. Plaintiff asserts both a constitutional challenge and a merits challenge to the ALJ's decision. Doc. 16. Plaintiff claims that the decision is constitutionally defective because the Social Security Act provision restricting the President's authority to remove a Social Security Commissioner without cause, 42 U.S.C. § 902(a)(3), violates the separation of powers doctrine. *Id.* at 6-9. Plaintiff contends that this constitutional defect entitles him to a new hearing before a different ALJ. *Id.* at 9.

With respect to the merits of the ALJ's decision, Plaintiff claims that the ALJ erred in two respects – finding that he could perform jobs that involve detailed instructions, and rejecting his symptom testimony. *Id.* at 9-13. Plaintiff contends that the ALJ's decision

should be vacated based on these alleged errors and the case remanded for an award of benefits. *Id.* at 13-15.

For reasons stated below, the Court finds that while the removal provision in § 902(a)(3) violates the separation of powers, Plaintiff is not entitled to a new hearing because he has failed to show harm from that constitutional infirmity. The Court further finds that Plaintiff's substantive challenge to the ALJ's decision is without merit.

**I.  Background.**

Plaintiff applied for social security benefits in December 2018, alleging disability as of November 15, 2016. Administrative Transcript ("Tr.") 346-62. Plaintiff and a vocational expert testified at a hearing before the ALJ on June 18, 2020. Tr. 159-82. On July 1, 2020, the ALJ found Plaintiff not disabled within the meaning of the Social Security Act. Tr. 16-40. This decision became the Commissioner's final decision when the Appeals Council denied review on December 7, 2020. Tr. 1-6. Plaintiff then commenced this action for judicial review (Doc. 1), and the parties briefed the issues after receipt of the certified administrative transcript (Docs. 12, 16, 20, 21).

**II.  Plaintiff's Constitutional Challenge to the ALJ's Decision.**

"Generally, restrictions on Presidential removal powers of an agency director violate the separation of powers and render an agency's structure unconstitutional." *Campbell v. Comm'r of Soc. Sec. Admin.*, No. CV-20-02048-PHX-JAT, 2022 WL 34677, at *3 (D. Ariz. Jan. 4, 2022) (citing *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020) (finding that statutory tenure protection conferred on the CFPB director violated the separation of powers); *Collins v. Yellen*, 141 S. Ct. 1761 (2021) (same with respect a statutory provision requiring "cause" to remove the federal housing director)). Section 902(a)(3) prohibits the President from removing the Social Security Commissioner without cause – the Commissioner "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3).

Plaintiff contends that § 902(a)(3) violates the separation of powers and he therefore was deprived of a constitutionally valid adjudicatory process. Doc. 16 at 6-9 (citing

*Seila Law*). Plaintiff claims that this case should be remanded for a new hearing before an ALJ who does not suffer from the "unconstitutional taint" of having previously heard and decided this case with no lawful authority to do so. *Id.* at 9.

Defendant concedes that § 902(a)(3) violates the separation of powers. Doc. 20 at 4 (citing Office of Legal Counsel, U.S. Dep't of Justice, *Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot.*, 2021 WL 2981542 (O.L.C. July 8, 2021) ("The President may remove the Commissioner of Social Security at will notwithstanding the statutory limitation on removal in 42 U.S.C. § 902(a)(3). The conclusion that the removal restriction is constitutionally unenforceable does not affect the validity of the remainder of the statute.")); *see also Lisa Y. v. Comm'r of Soc. Sec.*, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021) ("A straightforward application of *Seila Law* and *Collins* dictates a finding that § 902(a)(3)'s removal provision violates separation of powers. As in *Seila Law* and *Collins*, the Social Security Commissioner is a single officer at the head of an administrative agency and removable only for cause."). Defendant argues, however, that the unconstitutionality of § 902(a)(3)'s removal provision provides no basis for vacating the ALJ's decision in this case because Plaintiff has not shown that the removal provision has harmed him. Doc. 20 at 4 (citing *Collins*, 141 S. Ct. at 1787-89). The Court agrees.

The Supreme Court held in *Seila Law* and *Collins* that statutory limitations on the President's ability to remove an Executive Branch agency head violate the separation of powers. *Seila Law*, 140 S. Ct. at 2192; *Collins*, 141 S. Ct. at 1784. The *Seila Law* Court further held that a removal provision is "severable from the other statutory provisions bearing on the [agency's] authority[,]" and "[t]he agency may therefore continue to operate[.]" 140 S. Ct. at 2192. The Court confirmed this holding in *Collins*, explaining that where the agency head was properly appointed, "the unlawfulness of the removal provision does not strip the [agency head] of the power to undertake the other responsibilities of his office," and there was "no reason to regard any of the actions taken by the [agency] . . . as void." 141 S. Ct. at 1787-88 & n.23. The *Collins* Court concluded,

however, that this did not necessarily mean that the plaintiffs had no entitlement to relief because it was still possible for the removal provision to inflict "compensable harm." *Id.* at 1788-89. The Court provided two examples: (1) where the President had attempted to remove an agency head "but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal"; or (2) where the President had expressed displeasure with actions taken by an agency head and had asserted that he would remove the agency head "if the statute did not stand in the way." *Id.* at 1789.

Andrew Saul, who was appointed by former President Trump, was the Social Security Commissioner in 2020 when the ALJ heard and decided Plaintiff's claim for benefits and when the Appeals Council denied review. *See* Soc. Sec. Admin., *Historical Information*, https://www.ssa.gov/history/commissioners.html (noting that Mr. Saul served as Commissioner from June 17, 2019 until July 9, 2021) (last visited Feb. 9, 2022); *see also Sean E. M. v. Kijakazi*, No. 20-CV-07295-SK, 2022 WL 267406, at *2 & n.2 (N.D. Cal. Jan. 28, 2022) (taking judicial notice of this fact). Plaintiff does not contend that the President "sought to remove . . . Commissioner Saul or that either a Commissioner or the President was involved [in] or even aware of [his] disability benefits claim. Therefore, he [has] 'failed to show how or why § 902(a)(3)'s removal clause possibly harmed him.'" *Sean E. M.*, 2022 WL 267406, at *5 (quoting *Lisa Y.*, 2021 WL 5177363, at *7); *see Collins*, 141 S. Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions – which would not concern the President at all – would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference[.]"); *Perez-Kocher v. Comm'r of Soc. Sec.*, 2021 WL 6334838, at *5 (M.D. Fla. Nov. 23, 2021) ("Plaintiff has alleged no direct action by former Commissioner Saul himself, and no involvement – or even awareness – by the former President in the ALJ's decision. . . . Plaintiff has made no clear allegation that Acting Commissioner Saul's unconstitutional tenure resulted in compensable harm to him."); *Alice F. v. Comm'r of Soc. Sec.*, No. C21-5028-BAT, 2021 WL 5564429, at *3 (W.D. Wash. Nov. 29, 2021) ("Plaintiff presents nothing showing he

was possibly harmed by § 902 because President Trump desired or directed a result that differs from the Commissioner's final decision but was stymied by § 902.  Under the facts of this case, Plaintiff has not shown the possibility of harm as required by *Seila Law*, or *Collins*."); *Sarah H. v. Comm'r of Soc. Sec.*, No. 3:21-CV-05149-JRC, 2021 WL 5770269, at *5 (W.D. Wash. Dec. 6, 2021) ("[B]ecause there is no evidence that the former president sought to remove Commissioner Saul, there is no connection between § 902(a)(3)'s removal clause and possible harm the removal clause might have caused plaintiff."); *see also Thomas E. v. Comm'r of Soc. Sec.*, No. C21-5107-BAT, 2021 WL 5415241, at *5 (W.D. Wash. Nov. 19, 2021) ("[P]laintiff cannot plausibly state that were it not for the unconstitutional removal restriction, the President might have replaced Commissioner Saul with another Commissioner who would have removed the ALJ and replaced him with an ALJ who would not have rejected plaintiff's testimony[.]"); *Michele T. v. Comm'r of Soc. Sec.*, No. 3:20-CV-06085-JRC, 2021 WL 5356721, at *5 (W.D. Wash. Nov. 17, 2021) ("There is also nothing showing former President Trump would have removed Commissioner Saul and appointed a new Commissioner who would have administered this plaintiff's claims differently.  Rather, former President Trump appointed Commissioner Saul, and was still in office on February 18, 2020, when the ALJ's decision that plaintiff challenges was issued.").

Noting that the ALJ's delegation of authority in this case came from Commissioner Saul, Plaintiff argues that he has "suffered injuries" because he did not receive a constitutionally valid adjudicatory process.  Docs. 16 at 7, 21 at 4.  Plaintiff's "argument that there exists a but-for causal chain linking his denial of benefits and § 902(a)(3) is insufficient.  There is no immediately apparent connection between the ALJ denying [Plaintiff's] claims and § 902(a)(3)." *Nudelman v. Comm'r of Soc. Sec. Admin.*, No. CV-20-08301-PCT-MTL, 2022 WL 101213, at *13 (D. Ariz. Jan. 11, 2022).

What is more, the unlawfulness of § 902(a)(3)'s removal provision "does not strip [Commissioners] of the power to undertake the other responsibilities of their office,' particularly where there is no argument that the [Commissioner] was not properly

appointed." *Campbell*, 2022 WL 34677, at *3 (quoting *Collins*, 141 S. Ct. at 1788 & n.23). Plaintiff does not contest Commissioner Saul's or the ALJ's proper appointments. Plaintiff therefore has failed to show a compensable harm tied to Commissioner Saul's actions or § 902(a)(3)'s removal provision that would warrant a new hearing. *See id.*; *Julie N. v. Comm'r of Soc. Sec.*, No. C21-5263-MAT, 2022 WL 293138, at *6 (W.D. Wash. Feb. 1, 2022) ("Plaintiff's argument . . . has been rejected by the Supreme Court. In *Collins*, the Supreme Court held that the existence of an unconstitutional removal provision does not provide a basis to conclude that the agency head subject to the removal provision 'lacked the authority to carry out the functions of the office.'") (citation omitted); *Lisa Y.*, 2021 WL 5177363, at *6 ("[L]ike the plaintiffs in *Seila Law*, Plaintiff here argues § 902(a)(3)'s removal provision automatically renders all agency action unconstitutional. The Court in *Seila Law* rejected such an argument[,] observing one section of a statute may violate the Constitution without rendering the entire act void.") (citation omitted); *Grace G. v. Kijakazi*, No. 20-CV-1233-AJB-DEB, 2021 WL 6126396, at *3 (S.D. Cal. Dec. 28, 2021) ("Applying *Seila Law* and *Collins*, Plaintiff's argument fails. Section 902(a)(3) is severable from the remainder of the statutes governing the social security program. . . . The Court, therefore, concludes any constitutional deficiencies in § 902(a)(3) does not affect the validity of the ALJ's decision here.").

Plaintiff further asserts that his claim for benefits was decided under regulations promulgated by Commissioner Saul. Doc. 16 at 7. "Beyond arguing a constitutional taint flowing from § 902(a)(3), [Plaintiff] fails to point out which, if any, defective regulations were promulgated in this case, how they applied to his claim, and how they affected the outcome such that he suffered a compensable harm. While it is conceivable that this constitutional defect could cause compensable harm, Plaintiff has not shown that connection." *Nudelman*, 2022 WL 101213, at *13; *see Lisa Y.*, 2021 WL 5177363, at *7 ("[T]here is nothing showing the Commissioner or the SSA implemented new and relevant agency action that may have turned upon the President's inability to remove the Commissioner. Plaintiff has not identified any new regulations, agency policies or

directives Commissioner Saul installed that may have affected her claims. Plaintiff thus fails to show how or why § 902(a)(3) removal clause possibly harmed her.").

Plaintiff's reliance on *Lucia v. SEC*, 138 S. Ct. 2044 (2020), is misplaced. Docs. 16 at 9, 21 at 5. "[T]he Court in *Lucia* was addressing a defective appointment, not a defective removal statute." *Carla D. v. Kijakazi*, No. 2:20-CV-00361-LRS, 2022 WL 264460, at *2 (E.D. Wash. Jan. 27, 2022); *see Nudelman*, 2022 WL 101213, at *13 ("As the *Collins* Court's discussion of *Lucia* makes clear, the ALJ's decision is only per se unconstitutional if he lacked the authority to make it – for example, if he was not properly appointed[.]") (citation omitted); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1136-37 (9th Cir. 2021) ("Decker's insistence that *Lucia* mandates a new hearing before a new ALJ is incorrect. The Court in *Lucia* 'held that the appropriate remedy for an adjudication tainted with an *appointments violation* is a new hearing before a properly appointed official.'") (quoting *Lucia*, 138 S. Ct. at 2055) (emphasis in *Decker Coal*). Because Plaintiff does not dispute that the ALJ who adjudicated his social security claim was properly appointed, *Lucia* provides no remedy. *See* Doc. 20 at 4, 7 (noting that the ALJ's appointment was ratified by then-Acting Commissioner Berryhill); *Thomas E.*, 2021 WL 5415241, at *5 ("[Plaintiff's] argument . . . conflates an unconstitutional *removal* provision under *Seila Law* and *Collins* with an improper *appointment* provision under *Lucia* . . . . [T]here was no improper appointment of the ALJ in violation of *Lucia* because no one disputes that Acting Commissioner Berryhill had the authority to appoint the ALJ who heard and decided this case.") (emphasis in original); *Carriker v. Kijakazi*, No. 2:21-CV-00671-NJK, 2022 WL 203371, at *4 n.2 (D. Nev. Jan. 24, 2022) ("Plaintiff is not arguing that the ALJ was improperly appointed by then-Acting Commissioner Berryhill. . . . As such, this case does not involve an appointments challenge like those raised in *Lucia*[.]"); *Dondia M. L. v. Kijakazi*, No. 2:20-CV-06497-AFM, 2022 WL 60591, at *2 (C.D. Cal. Jan. 5, 2022) ("Unlike *Lucia*, . . . Plaintiff does not rely on an allegedly unconstitutional appointment. To the contrary, she essentially concedes that ALJ Gunn was properly appointed by Acting Commissioner Berryhill at the time she decided Plaintiff's disability claim.").

Because Plaintiff has shown no cognizable harm from § 902(a)(3)'s removal provision, he is not entitled to a new administrative hearing. *See* Doc. 20 at 10; *Dondia M. L.*, 2022 WL 60591, at *3 ("[N]othing in the record supports the conclusion that the disability decision in Plaintiff's case is in anyway traceable to Commissioner Saul. Accordingly, Plaintiff is not entitled to a new hearing."); *Decker Coal*, 8 F.4th at 1137 ("[T]he ALJ lawfully exercised power that he possessed by virtue of his appointment, which the Secretary ratified before the ALJ adjudicated the claim. Absent a showing of harm, we refuse to unwind the decisions below.").[1]

### III. Plaintiff's Merits Challenge to the ALJ's Decision.

#### A. Standard of Review.

In evaluating the merits of an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may vacate a decision based on legal error or not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* In determining whether substantial evidence supports the ALJ's decision, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (citation omitted). The ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the medical evidence, and the decision must be upheld where the evidence is susceptible to more than one rational interpretation. *Magallanes*, 881 F.2d at 750; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755.

---

[1] Given this ruling, the Court need not consider Defendant's other arguments regarding Plaintiff's request for a new hearing before a different ALJ, including the harmless error doctrine, the de facto officer doctrine, the rule of necessity, and prudential considerations. Doc. 20 at 12-17; *see Carla D.*, 2022 WL 264460, at *3 (declining to consider those arguments "because Plaintiff's constitutional challenge fails on its face").

**B.     The Five-Step Evaluation Process and the ALJ's Findings.**

Whether Plaintiff is disabled is determined using a five-step process. Plaintiff must show that (1) he has not engaged in substantial gainful activity since the alleged disability date, (2) he has a severe impairment, and (3) his impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") – the most he can do despite his impairments – precludes him from performing past work. If Plaintiff meets his burden at step three, he is presumed disabled and the process ends. If the inquiry proceeds and Plaintiff meets his burden at step four, then (5) the Commissioner must show that Plaintiff is able to perform other available work given his RFC and relevant vocational factors, such as his age, education, and experience. *See* 20 C.F.R. §§ 404.1520 (disability in general); 416.920(a) (disability for adults).

Plaintiff has met his burden at steps one and two – he has not engaged in substantial gainful activity since the alleged disability date and has multiple severe impairments: obesity; right shoulder dislocation; chronic pain syndrome; restless leg syndrome; bipolar disorder; borderline personality disorder; schizoaffective disorder; social phobia; anxiety; and major depressive disorder. Tr. 22. The ALJ found at step three that Plaintiff's impairments do not constitute a listed impairment. Tr. 23-25. At step four, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, but with certain non-exertional limitations. Tr. 25. Specifically, the ALJ found:

> The claimant can frequently operate hand controls, reach, push, pull, handle, finger, and feel with the right upper extremity. He can occasionally push, pull or operate foot controls with both lower extremities. The claimant can frequently kneel, crouch, stoop, balance, and crawl, and can frequently climb stairs and ramps. He can occasionally climb ladders, ropes, and scaffolds, and he can never be exposed to unprotected heights and moving mechanical parts.

*Id.* With respect to Plaintiff's mental impairments, the ALJ found:

> [T]he claimant is able to understand, carry out, and remember simple instructions and make simple work related decisions. He can occasionally deal with supervisors and coworkers and can never deal with the public. The

>claimant can occasionally deal with changes in a routine work setting. He will be off task 5% of the workday and absent from work one day per month.

*Id.* Based on this RFC, the ALJ concluded that Plaintiff is not able to perform his past work as a trailer rental clerk, pharmacy technician, print finisher, sales attendant, or cashier. Tr. 34. At the fifth step, the ALJ relied on the testimony of the vocational expert in concluding that Plaintiff – given his RFC, age, education, and experience – is able to perform certain unskilled work available in the national economy, such as an assembler, cleaner, and stocker. Tr. 34-35.[2]

Plaintiff argues that the ALJ erred in finding that he could perform jobs that require "level two reasoning," which purportedly is in excess of the RFC limitation to "simple instructions." Doc. 16 at 9-10. Plaintiff further argues that the ALJ erred in rejecting his symptom testimony. *Id.* at 10-13. Defendant contends that the ALJ committed no legal error and his decision is supported by substantial evidence. Doc. 20 at 18-23.

### 1. Plaintiff's Argument Regarding Level Two Reasoning Jobs.

Relying on vocational expert testimony at step five, an ALJ may consult the Dictionary of Occupational Titles ("DOT") to identify jobs in the national economy that are consistent with a claimant's RFC. *See* 20 C.F.R. §§ 416.966, 416.969; *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). Appendix C to the DOT sets forth criteria for evaluating jobs based on their physical and mental requirements. DOT, Appx. C – Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991). The DOT uses general educational development ("GED") reasoning levels that apply to each job. *Id.* GED reasoning levels define "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Id.* at III – Scale of GED, Reasoning Development. The reasoning levels range from one, which requires the least reasoning, to six, which requires the most. *Id.* To perform level one jobs, a claimant must be able to apply commonsense understanding to carry out "simple one- or two-step"

---

[2] Plaintiff has a high school education, and at 39 years old, is a "younger individual" (age 18-49). Tr. 34 (citing applicable regulations).

instructions. *Id.* Level two positions require the ability to carry out "detailed but uninvolved" instructions. *Id.*

The ALJ found that Plaintiff is only able to carry out "simple instructions," but did not limit those instructions to a certain number of steps. *See* Tr. 25, 33. The vocational expert testified that Plaintiff is capable of performing unskilled work as an assembler (DOT Code 806.684-010), cleaner (323.687-010), and stocker (922.687-058). Tr. 177-80. Each of those jobs requires level two reasoning. *See* DOT, 1991 WL 681470 (assembler); 1991 WL 672782 (cleaner); 1991 WL 688132 (stocker).

Plaintiff argues that because the identified jobs require level two reasoning – the ability to carry out "detailed but uninvolved" instructions – they exceed his RFC limitation to "simple instructions." Doc. 16 at 9-10, 21 at 5. "This argument is without merit as courts within the Ninth Circuit have consistently held that a limitation requiring simple or routine instructions encompasses the reasoning levels of one and two." *Campbell*, 2022 WL 34677, at *4 (quoting *Staples v. Acting Comm'r of Soc. Sec. Admin.*, No. CV 17-03253-PHX-ESW, 2018 WL 3238448, at *6 (D. Ariz. July 3, 2018) (collecting cases)). As one district court explained:

> [W]hile [Level 2 reasoning] instructions may be detailed, they may also be simple. A task that includes "detailed, but uninvolved" instructions may consist of a number of steps, none of which are complex. Without the express limitation to "one or two" steps or instructions, there is no limitation to Level 1. Therefore, a plaintiff who is limited to "short, simple instructions" is capable of performing a job requiring Level 2 reasoning.

*Barnes v. Colvin*, No. 6:14-CV-01906-HZ, 2015 WL 8160669, at *4 (D. Or. Dec. 7, 2015) (citations and brackets omitted); *see also Leah Y. v. Berryhill*, 362 F. Supp. 3d 940, 946 (D. Or. 2019) (same); *Davis v. Berryhill*, 743 F. App'x 846, 850 (9th Cir. 2018) ("Davis's assertion that her RFC limitation to understanding, remembering, and carrying out only simple instructions conflicts with the counter clerk position's requirement of Reasoning Level 2 lacks merit."); *Davis v. Saul*, 846 F. App'x 464, 466 (9th Cir. 2021) ("Simple work

is consistent with positions requiring Reasoning Level 2.") (citing *Zavalin v. Colvin*, 778 F.3d 842, 846-47 (9th Cir. 2015)).

Plaintiff cites *Rounds v. Commissioner of Social Security*, 807 F.3d 996, 1003-04 (9th Cir. 2015), for the proposition that there is a conflict between jobs requiring level two reasoning and a limitation to "one- and two-step tasks." Doc. 16 at 9. But the ALJ limited Plaintiff to simple instructions, not to one- and two-step tasks. Tr. 25. Plaintiff's reliance on *Rounds* is misplaced. *See Campbell*, 2022 WL 34677, at *5 ("While Plaintiff relies on *Rounds* . . . for [her] position that an RFC limitation to 'simple instructions' demands jobs with Level One reasoning, the Ninth Circuit expressly distinguished its holding from other decisions because the RFC in *Rounds* explicitly included a limitation to 'one- or two-step tasks.'"); *Kaitlyn B. v. Comm'r of Soc. Sec.*, No. C20-5963-SKV, 2021 WL 2432324, at *5 (W.D. Wash. June 15, 2021) ("[T]he Ninth Circuit . . . clarified the relationship between RFC restrictions and DOT reasoning levels in *Rounds*[,] . . . holding that an RFC restriction to 1-2-step tasks was more restrictive than a limitation to simple or repetitive tasks[.]"); *Miller v. Kijakazi*, No. CV-20-1725-PHX-MTL, 2021 WL 5768811, at *9 (D. Ariz. Dec. 6, 2021) ("[T]he Court sees no apparent conflict between the ability to perform 'simple tasks,' 'simple, repetitive tasks,' or 'simple, routine, repetitive work,' and the ability to perform Level 2 Jobs. Under *Rounds*, however, a more specific limitation to one-to-two step tasks conflicts with the requirements of Level 2 Jobs."); *Davis*, 743 F. App'x at 850 ("[W]e specifically distinguished the facts in *Rounds* from those in cases such as Davis's, in which the RFC limited the claimant to 'simple' tasks. There, the conflict arose from Rounds's particular limitation to 'one-to two-step tasks[.]'").

Because the ALJ limited Plaintiff to simple instructions and the Ninth Circuit has found this RFC to be consistent with reasoning level two work, Plaintiff's argument lacks merit. *See* Doc. 20 at 18-19; *Davis*, 743 F. App'x at 850; *Campbell*, 2022 WL 34677, at *5 ("Because Plaintiff's RFC is not limited to one- or two-step instructions, the Court finds no apparent conflict between Plaintiff's RFC and the identified jobs requiring 'detailed but uninvolved instructions.'") (quoting *Barnes*, 2015 WL 8160669, at *4).

### 2. Plaintiff's Argument Regarding Symptom Testimony.

Plaintiff argues that the ALJ erred in analyzing his subjective symptom testimony. Docs. 16 at 10-13, 21 at 6-7. Curiously, Plaintiff identifies no specific testimony that was not accounted for in the ALJ's RFC assessment or that the ALJ should have found credible, but rejected. Plaintiff's general and conclusory argument provides no basis for a remand. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address a challenge to the ALJ's finding where the plaintiff "failed to argue this issue with any specificity in his briefing") (citation omitted); *Rogal v. Astrue*, No. C12-5158-RSL-BAT, 2012 WL 7141260, at *3 (W.D. Wash. Dec. 7, 2012) ("It is not enough merely to present an argument in the skimpiest way, and leave the Court to do counsel's work – framing the argument and putting flesh on its bones[.]"); *Christensen v. Berryhill*, No. 2:15-CV-2658 AC, 2017 WL 931806, at *4 n.4 (E.D. Cal. Mar. 9, 2017) ("[P]laintiff fails to explain in what way the RFC fails to incorporate the limitations contained in plaintiff's testimony. Plaintiff's entire argument on this point is simply a lengthy recitation of the applicable legal standards, with no attempt to apply them to the actual facts or testimony in the record. The court accordingly rejects this argument."); *Dorrel v. Berryhill*, No. EDCV 17-1513 JC, 2018 WL 1621416, at *4 (C.D. Cal. Mar. 29, 2018) ("Plaintiff . . . says 'the ALJ summarized that testimony in the decision,' but simply cites a single page from the ALJ's decision which addresses multiple issues, and plaintiff does not specify what portion of 'that testimony' the ALJ purportedly rejected in error. Such sweeping and conclusory arguments are insufficient to justify a remand.") (citations omitted).

What is more, a review of the record and the ALJ's decision shows that that ALJ properly evaluated Plaintiff's testimony. *See* Doc. 20 at 19-22. Because there is no evidence of malingering in this case, the ALJ could discount Plaintiff's testimony about the severity of his symptoms by making "specific findings stating clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see* 20 C.F.R. § 404.1529(c)(2); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *Cotton v. Bowen*,

799 F.2d 1403, 1407 (9th Cir. 1986) ("[T]the Secretary is free to decide to disbelieve [subjective symptom] testimony, but must make specific findings justifying that decision.") (citations omitted). The Court finds that the ALJ provided specific, clear, and convincing reasons, supported by substantial evidence, to discount Plaintiff's testimony.

Plaintiff testified that on a typical day, he is up at 11 a.m., has lunch with his son and then takes a nap with him, they do homework, read, or watch TV, and then they eat dinner, take a bath, and go to bed. Tr. 169-70. He has "good days and bad days" due to his depression, and has "no energy and no drive to do stuff" on bad days, which occur at least three times a week. Tr. 169. His "[d]rowsiness, fatigue, and mental illness" prevent him from working. Tr. 168. He has difficulty getting along with people if he is around them for more than an hour. Tr. 171. He would have a hard time being consistent with attendance at even basic, sit-down jobs because he gets overwhelmed and "wouldn't be willing to keep doing it." Tr. 170.

The ALJ thoroughly recounted Plaintiff's testimony. Tr. 26. The ALJ did not completely reject Plaintiff's testimony about the severity of his symptoms, but instead found that the symptoms do not preclude all work. Tr. 26-31. Specifically, the ALJ found that Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, but that his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 26.

The ALJ chronicled how, in 2016 and 2017, Plaintiff was diagnosed with alcohol and cannabis abuse disorders. Tr. 28. Over the next two years, however, Plaintiff received substance abuse treatment and became sober, and his mental status examinations were normal and he reported minimal symptoms. Tr. 28-29 (discussing Plaintiff's treatment notes); *see also* Doc. 20 at 21 (same). Plaintiff participated in various group therapies, in which he socialized and interacted well with peers. Tr. 29. In April 2019, Plaintiff stated that he was doing much better and his medications helped with depression. *Id.* During therapy in May 2019, Plaintiff stated that he was doing well and had maintained an

"equilibrium" with no manic episodes. *Id.* And in August 2019, Plaintiff reported more energy, better focus, and better mood. Tr. 32.

The ALJ did not err in relying on objective medical evidence and Plaintiff's treatment history in discounting his subjective symptom testimony. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citing 20 C.F.R. § 404.1529(c)(2)); SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017) (explaining that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms[.]"); *Suica v. Saul*, No. 2:20-CV-00853-BNW, 2021 WL 2624515, at *8 (D. Nev. June 25, 2021) ("The ALJ's finding that objective medical evidence is inconsistent with Plaintiff's pain and symptom testimony was . . . a specific, clear, and convincing reason, supported by substantial evidence, to discount her pain and symptom testimony."); *Karen J. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-CV-02136-HL, 2022 WL 179214, at *6 (D. Or. Jan. 19, 2022) ("[T]here was substantial evidence that Plaintiff's treatment was having some effect, and the ALJ was entitled to rely on this evidence to discount Plaintiff's subjective symptom testimony."); *Thomas v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01787-PHX-MTL, 2022 WL 292547, at *6 (D. Ariz. Feb. 1, 2022) ("Plaintiff's alleged impairments have been responsive to treatment and [this evidence was] permissibly relied on by the ALJ[.]"); *Vetrano v. Berryhill*, No. EDCV 17-02440-JEM, 2019 WL 1060037, at *10 (C.D. Cal. Mar. 5, 2019) ("Impairments that can be controlled with medication and treatment are not disabling.") (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)).

The ALJ noted that Plaintiff "reported rather limited daily activities, though the record indicates some normal functioning." Tr. 21. Specifically:

> [T]he claimant reported that he took care of his son with some help from family, he prepared simple meals occasionally, he tidied up and did some laundry, and he shopped online. He was able to drive, manage money, read,

and watch TV (Ex. B7E). In November 2016, he advised clinicians that he watched TV, played games, spent time with family, liked to talk to people, and enjoyed traveling (Ex. B3F/9). In April 2018, he reported that he liked to read and play games on his phone (Ex. B3F/90). He watched movies with his family (Ex. B3F/95). The claimant attended AA meetings and enjoyed walking (Ex. B3F/122). At the consultative exam in April 2019, the claimant stated that he went to groups, took his son to appointments, he sometimes went to the store for short periods, and he liked to drive (Ex. B5F/2). During group therapy in May 2019, he shared that he enjoyed going to the park on the weekends with his son and going to the movies with his friends (Ex. B11F/43). In October 2019, he mentioned helping out with his nephew (Ex. B11F/4).

Tr. 31.

Plaintiff asserts that the ALJ failed to explain how his daily activities are inconsistent with his symptom testimony. Doc. 16 at 12. Plaintiff is wrong. In finding that Plaintiff's impairments have caused moderate limitations, the ALJ identified specific testimony and alleged limitations that are inconsistent with Plaintiff's activities. Tr. 31.

Plaintiff further asserts that the ALJ failed to explain how his activities are transferable to a work setting. Doc. 16 at 12. But the ALJ did not find that Plaintiff's activities show an ability to work. Instead, he found that the activities indicate "some normal functioning." Tr. 31. The ALJ did not err in this regard. *See Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (the ALJ properly recognized that daily activities "did not suggest Valentine could return to his old job[,]" but "did suggest that [his] later claims about the severity of his limitations were exaggerated"); *Burch*, 400 F.3d at 680-81 ("Although the evidence of Burch's daily activities may also admit of an interpretation more favorable to [her], the ALJ's interpretation was rational, and 'we must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'") (quoting *Magallanes*, 881 F.2d at 750).

Plaintiff notes that the mere fact that he engages in certain daily activities "does not in any way detract from [his] credibility as to [his] overall disability." Doc. 16 at 12 (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). But this does not mean, as Plaintiff appears to suggest, that an ALJ must find that a claimant's daily activities show

- 16 -

an ability to work in order to discount conflicting symptom testimony. To the contrary, "even where a claimant's activities suggest some difficulty in functioning, an ALJ may give less weight to subjective complaints to the extent a claimant's apparent actual level of activity is inconsistent with the extent of functional limitation the claimant has alleged." *Nazarian v. Berryhill*, No. CV 17-1114 JC, 2018 WL 2938581, at *7 (C.D. Cal. June 7, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). The ALJ properly considered Plaintiff's daily activities in the credibility analysis. *See* 20 C.F.R. § 404.1529(c)(3); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (explaining that the ALJ may consider daily activities when weighing the claimant's credibility, and, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing")).

Moreover, the ALJ found that some functional limitations were warranted due to Plaintiff's impairments. Tr. 30. The ALJ limited Plaintiff to jobs with only occasional interaction with coworkers and supervisors and no interaction with the public. Tr. 25, 33. The ALJ concluded, however, that "[d]espite rather significant diagnoses, clinical findings were generally normal during the relevant period" and they "do not support the degree of limitations [Plaintiff] has alleged[.]" Tr. 30.[3]

Plaintiff has not shown that the ALJ erred in analyzing his subjective symptom testimony. *See Elizabeth W. v. Saul*, No. EDCV 20-1254-KS, 2021 WL 2669304, at *6 (C.D. Cal. June 28, 2021) ("Plaintiff mischaracterizes the ALJ's discussion of the inconsistencies between Plaintiff's allegations about the intensity, persistence, and limiting effects of her symptoms, the objective medical evidence, and her own activities. Rather than relying on boilerplate language, the ALJ dived into the medical records and identified particular treatment notes that contradicted specific allegations Plaintiff made[.]"); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) ("[A]s we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility

---

[3] The ALJ gave little weight to the opinion of a state agency physician that Plaintiff's mental impairments were non-severe because "the record supports additional limitations to interact with others." Tr. 33.

determinations are the province of the ALJ. Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.") (citation omitted).

**IT IS ORDERED** that the final decision of the Commissioner of Social Security Administration (Tr. 1-6, 16-40) is **affirmed**. The Clerk of Court shall enter judgment.[4]

Dated this 22nd day of March, 2022.

David G. Campbell
Senior United States District Judge

---

[4] Given this ruling, the Court need not address the parties' arguments regarding the purpose of any remand. *See* Docs. 16 at 13-15, 20 at 23-25.